IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LARRY COLEMAN, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MORRIS-SHEA BRIDGE COMPANY, INC., *et al.*, <br><br> Defendants. | 2:18-cv-00248-LSC |

**MEMORANDUM OF OPINION**

Plaintiffs Larry Coleman ("Larry"), Chester Coleman ("Chester"), and Freddie Seltzer ("Freddie") (collectively "Plaintiffs") bring this action against Defendants Morris-Shea Bridge Company, Inc. ("Morris-Shea"), Richard J. Shea, Jr. ("Dick Shea"), and Richard J. Shea, III ("Richard Shea") (collectively "Defendants"), alleging violations of the Fair Labor Standards Act ("FLSA"), Title VII, 42 U.S.C. § 1981, and the Age Discrimination in Employment Act ("ADEA"). Before the Court is Morris-Shea and Dick Shea's motion to dismiss. (Doc. 20.) The motion has been fully briefed and is ripe for review. For the reasons stated below, the motion is due to be denied.

I. BACKGROUND[1]

Defendant Morris-Shea is a heavy construction contractor with a focus on deep foundation work related to bridges, highways, buildings, and similar foundation engineering. The company is managed and partially owned by Defendants Dick and Richard Shea who are Caucasian. Both Dick and Richard Shea are involved either directly or indirectly with all decisions regarding Morris-Shea employees. Plaintiffs Larry Coleman, Chester Coleman, and Freddie Seltzer are three brothers who are African-American. The brothers are age sixty, fifty-six, and fifty-two, respectively. Each brother was employed by Morris-Shea for at least twenty-five years. Larry worked in various positions at Morris-Shea, and his last position was that of superintendent. Chester and Freddie were construction crew members who worked on various projects for Morris-Shea throughout the years.

On April 10, 2017, the three brothers were all working on a construction project at the home of Richard Shea in Mountain Brook, Alabama. Around lunch time, Freddie and Chester left the worksite to get a sandwich at a local restaurant. Larry did not leave the worksite during lunch because he had

---

[1] In evaluating a motion to dismiss, this Court "accept[s] the allegations in the complaint as true and construe[s] the facts in the light most favorable to the plaintiff." *Johnson v. Midland Funding, LLC*, 823 F.3d 1334, 1337 (11th Cir. 2016). The following facts, are therefore, taken from the allegations contained in Plaintiffs' Amended Complaint, and the Court makes no ruling on their veracity.

brought his lunch. Although it took Freddie and Chester less than thirty minutes to return, Dick Shea complained to Larry that his brothers were taking too long of a lunch break. When they returned to the worksite, Dick Shea told Larry to send Freddie and Chester home. The next morning, when Larry arrived at the worksite, another superintendent for Morris-Shea told him that Dick Shea wanted him to leave the worksite and go home.

About two weeks later, Lee Dubberly, a different superintendent for Morris-Shea, called Larry and told him that he, Chester, and Freddie had all been terminated by Morris-Shea. Although no one at Morris-Shea would tell the brothers why they had been fired, when Larry asked human resources to complete a form necessary for him to receive food stamps, a human resource manager wrote "lack of work" as the reason for his termination. Since their termination, Morris-Shea has not recalled the Plaintiffs to work and has determined that they are not eligible for rehire. According to Plaintiffs, Morris-Shea has never terminated a white employee for taking more than thirty minutes at lunch. The construction workers hired to replace Plaintiffs are all white and are substantially younger than Plaintiffs.

In May 2017, a month after they were terminated, Plaintiffs filed charges with the Equal Employment Opportunity Commission ("EEOC"), alleging that Morris-Shea discriminated against them. Specifically, the EEOC

charges claim that the brothers were harassed by fellow white employees and compensated less than similarly situated white employees due to their race. The EEOC charges also include allegations that the brothers were terminated due to age and race discrimination.

II. STANDARD OF REVIEW

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, in order to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint "must plead enough facts to state a claim to relief that is plausible on its face." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347–48 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Stated another way, the factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1301 (11th Cir. 2010). A complaint that "succeeds in identifying facts that are suggestive enough to render [the necessary elements of a claim] plausible" will survive

a motion to dismiss. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* If the pleading "contain[s] enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory,'" it satisfies the notice pleading standard. *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683–84 (11th Cir. 2001)).

"In general, if it considers materials outside of the complaint, a district court must convert the motion to dismiss into a summary judgment motion." *SFM Holdings, Ltd. v. Banc. of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). However, a "district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not

challenged." *See id.* (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)). In their Amended Complaint, Plaintiffs refer to their EEOC charges and notice of right to sue letters. The EEOC charges are also referred to throughout the motion to dismiss. As the Court finds the EEOC charges central to the plaintiffs' claims and their authenticity is not in dispute, the Court will take them into consideration in this Opinion.[2]

## III. DISCUSSION

Defendant Dick Shea seeks to dismiss the § 1981 claims brought against him in Counts Five, Six, Seven, Eleven, Twelve, and Thirteen of the Amended Complaint for failure to state a claim. Morris-Shea also seeks dismissal of certain allegations contained within Counts Two and Eight of the Amended Complaint, arguing that Plaintiff Larry Coleman failed to exhaust his administrative remedies with respect to these allegations. Defendants also ask the Court to require the Plaintiffs to re-plead their claims, contending that the Amended Complaint is "needlessly long, unnecessarily repetitive, and frustrates Defendants' ability to respond to material allegations against them." (*See* Doc. 20 at 12.) The Court will address each argument in turn.

---

[2] Typically, an EEOC charge will not merely be referenced by the plaintiff or defendant but will be attached as either an exhibit to the complaint or motion to dismiss. Here, the EEOC charges are not attached as exhibits to either the Amended Complaint or the Motion to Dismiss. However, the charges are in the record as attachments to Plaintiffs' original complaint. (*See* Docs. 1-1, 1-2, & 1-3.)

## A. 42 U.S.C. § 1981 Claims Against Dick Shea

Under 42 U.S.C. § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981. "To state a claim of race discrimination under § 1981, [a plaintiff] must allege facts establishing: (1) that [he] is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *See Moore v. Grady Mem'l Hosp. Corp.*, 834 F.3d 1168, 1171–72 (11th Cir. 2016) (quoting *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1270 (11th Cir. 2004)). Unlike claims of racial discrimination brought under Title VII, individual employees may be held personally liable for violating § 1981. *See Faraca v. Clements*, 506 F.2d 956, 959 (5th Cir. 1975).[3] However, a supervisor may be held individually liable under § 1981 only if he personally participated in

---

[3] The Eleventh Circuit has adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

the alleged discrimination. *See Burnstein v. Emtel, Inc.*, 137 Fed. App'x 205, 208 (11th Cir. 2005).[4]

Plaintiffs bring § 1981 claims against all three Defendants, alleging that they were compensated less than white employees and subjected to a racially hostile work environment. Defendant Dick Shea does not dispute that Plaintiffs have sufficiently alleged that they are members of a racial minority and that the alleged discrimination concerns activities described in the statute. However, he argues that Plaintiffs' allegation that "[a]cting as the manager of Morris-Shea, [Dick Shea] is involved either directly or indirectly, with all decisions regarding Morris-Shea's employment contract[s] with" Plaintiffs is insufficient to state a claim that he personally engaged in intentional discrimination. (*See* Doc. 20 at 6.) Instead, he contends that to state a § 1981 claim against him Plaintiffs would need to allege that he personally decided to pay Plaintiffs less than white employees or that he personally subjected Plaintiffs to a racially hostile work environment.

The Court disagrees with Dick Shea's contention that Plaintiffs have not alleged sufficient facts to state claims for individual § 1981 liability against him. Plaintiffs' allegations that Dick Shea was involved with all decisions

---

[4] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

regarding Morris-Shea's employment contracts could give rise to the reasonable inference that Dick Shea was involved in the decisions to compensate Plaintiffs differently than their white counterparts. As Plaintiffs have stated that these decisions were racially motivated, these allegations could support a claim of individual § 1981 liability under Counts Five, Six, and Seven of the Amended Complaint. Moreover, the Plaintiffs' allegations that Dick Shea is the manager of Morris-Shea, who is involved with all decisions regarding Morris-Shea employees, combined with the allegations that the Defendants, collectively, engaged in acts that favored white employees over Plaintiffs could support a claim against Dick Shea for § 1981 liability under Counts Eleven, Twelve, and Thirteen of the Amended Complaint.

Contrary to Dick Shea's assertion, the Plaintiffs are not attempting to impermissibly hold him vicariously liable for the alleged discriminatory acts of others. Instead, they have alleged facts that raise a reasonable inference that Dick Shea personally participated in decisions that led to the Plaintiffs being compensated less than white employees and being subjected to a racially hostile work environment. Certainly, to survive summary judgment Plaintiffs will have to present evidence of Dick Shea's personal involvement in these decisions. However, at this motion to dismiss stage, the Court

cannot say that there are insufficient factual allegations linking Dick Shea to the alleged discriminatory conduct that would warrant dismissal of the § 1981 claims against him. Therefore, Dick Shea's motion to dismiss the § 1981 claims against him is due to be denied.

### B. Exhaustion of Administrative Remedies

Title VII prohibits employment discrimination based on race. 42 U.S.C. § 2000e-2. This includes discrimination with respect to compensation or any other terms or conditions of employment. *See id.* A plaintiff may bring a Title VII action in district court against an employer that discriminates against him based on race but only after exhausting his administrative remedies. *See Forehand v. Fla. State Hosp. at Chattahoochee*, 89 F.3d 1562, 1567 (11th Cir. 1996). Typically, exhaustion requires a plaintiff to file a charge with the EEOC. *See id.* The EEOC charge limits the scope of the plaintiff's allegations. *See Gregory v. Ga. Dep't of Human Resources*, 355 F.3d 1277, 1279 (11th Cir. 2004). However, "the scope of an EEOC complaint should not be strictly interpreted." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970). Rather, a plaintiff's district court complaint "is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory*, 355 F.3d at 1280 (quoting *Sanchez*, 431 F.2d at 465). Thus, claims that "amplify, clarify, or more clearly

focus" the allegations in the EEOC charge are permissible, but those that make allegations of new acts of discrimination are disallowed. *See id.* at 1279 (citing *Wu v. Thomas*, 863 F.2d 1543, 1548 (11th Cir. 1989)).

Morris-Shea points to three allegations by Larry Coleman in the Amended Complaint that it argues are materially different than the claims in his EEOC charge. Specifically, Morris-Shea points to allegations in Count Two of the Amended Complaint that in 2008 Morris-Shea reduced the salaries paid to all superintendents, including Larry, but that after business improved Morris-Shea only reinstated the salaries of the Caucasian superintendents. (*See* Doc. 18 at ¶¶ 45–46.) Morris-Shea also contends that allegations in Count Eight of the Amended Complaint that Larry was improperly classified as a salaried employee and that Larry was not rewarded for work performed in the same manner as similarly situated white employees are new allegations of discrimination that did not grow out of Larry's EEOC charge. (*See id.* at ¶¶ 166–69.)

While it is true that none of these specific allegations were made in the EEOC charge, they are all related to the claims Larry made to the EEOC. With respect to Count Two, Larry's EEOC charge states that "[t]here was . . . a disparity [in] how African Americans were paid compared to Caucasian employees." (*See* Doc. 1-1 at 5.) It further states that Larry was paid $1,400

a week while a white counterpart made $2,500 a week. (*See id.*) Although the EEOC Charge does not mention that this was not always the case and that the white superintendents' salaries were reinstated after an uptick in business while Larry's was not, the information provided was sufficient to put Morris-Shea on notice of Larry's Title VII compensation claim against it. An EEOC investigation would likely look at the entire picture of Larry's salary history with Morris-Shea when investigating his claim that he was paid differently than similarly situated white employees. Further, the allegations regarding reinstatement of salary are not allegations of a different type of discrimination than the compensation claims contained within the EEOC charge. Therefore, Morris-Shea's motion to dismiss this allegation from Count Two for failure to comply with Title VII's administrative exhaustion requirement is due to be denied.

Similarly, Morris-Shea's argument that the allegations in Count Eight are due to be dismissed is without merit. Morris-Shea contends that although Larry's EEOC Charge included claims that he was salaried and paid less than other salaried employees that there are no allegations in the EEOC Charge related to whether he was discriminated against due to his exempt status under the FLSA. According to Morris-Shea, an EEOC investigation would only look to whether or not Larry was treated differently than other

salaried employees and not look to his treatment compared to non-salaried white employees. However, as pointed out by Plaintiffs, Larry's EEOC Charge included the statement that he "was classified as a salary worker and paid $35 an hour for 8 hours a day, five days a week, despite having to work longer hours and not treated as a superintendent." (*See id.*) Although the EEOC Charge never specifically mentions the FLSA, "[t]he specific words of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow." IMPACT v. Firestone, 893 F.2d 1189, 1196 (11th Cir. 1990) (quoting *Sanchez*, 431 F.2d at 465). Due to Larry's broad assertions regarding his classification as a salaried worker and the failure to pay him overtime, the Court is convinced that it would have been reasonable for the EEOC to investigate Larry's treatment in comparison to the non-salaried white employees.

The same is true for Larry's allegations in Count Eight that Superintendent Dubberly and his crew were rewarded for successfully completing tasks assigned to them but Larry and his crew were never rewarded for the work they performed. (*See* Doc. 18 at ¶ 166.) Larry's EEOC charge stated that "[t]here was an obvious difference in how I was treated as the lone African-American superintendent compared to the other white superintendents." (*See* Doc. 1-1 at 5.) Based on this allegation, an EEOC

investigation into how Morris-Shea treated Larry would likely look at all aspects of how he was treated in comparison to the white superintendents and not just the specific examples provided in the EEOC charge. Assuming Larry's allegation that Morris-Shea treated his crew differently is true, this investigation would likely reveal that Morris-Shea only rewarded the white superintendents' crews for the successful completion of tasks. Therefore, Morris-Shea's motion to dismiss the allegations in Count Eight for failure to exhaust administrative remedies is due to be denied.[5]

### C. Shotgun Pleading

Defendants finally argue that the Court should strike the Amended Complaint and require Plaintiffs to re-plead their claims. Rule 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) further provides:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or

---

[5] Morris-Shea also states that the allegation that Morris-Shea "never rewarded Larry Coleman for the work performed by him and his crew" is vague and does not put it on notice of the precise unlawful conduct complained of. (*See* Doc. 20 at 9.) To the extent that Morris-Shea argues that this allegation is deficiently pleaded, the Court agrees with Plaintiffs that this allegation provides sufficient factual detail to survive the motion to dismiss stage.

occurrence–and each defense other than a denial—must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b).

Complaints that violate these rules are often referred to as "shotgun pleadings." "The failure of the plaintiff to identify his claims with sufficient clarity to enable the defendant to frame a responsible pleading constitutes shotgun pleading." *See Sledge v. Goodyear Dunlop Tires North America, Ltd.*, 275 F.3d 1014, 1018 n.8 (11th Cir. 2001). The Eleventh Circuit has identified four rough "categories" of shotgun pleadings that are prohibited:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type . . . is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (footnotes omitted). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way

or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

Plaintiffs' Amended Complaint is ninety-one pages long and includes five hundred separate paragraphs. Although the Amended Complaint alleges violations of only four different federal statutes, it contains twenty-two counts. As Defendants note, "[w]hile each Count is specific to a particular Plaintiff, most of the paragraphs are substantially identical to the paragraphs contained in the other Counts of the same claim." (*See* Doc. 20 at 12.) For example, the Amended Complaint does not include a factual allegation section, but instead, repeats basic facts, such as, "Morris-Shea is a heavy construction contractor with a focus on deep foundation work related to bridges, highways, buildings, and similar foundation engineering" in multiple different counts. (*See* Doc. 18 at ¶¶ 15, 99, 125, 142, 218, 242, 259, 352, 376, 398.) At times, the Amended Complaint refers collectively to "Defendants" rather than specify which Defendant committed which alleged act.

Even though Plaintiffs' Amended Complaint bears some resemblance to a shotgun pleading, it is not one. "[T]his is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations

underlying each count." *Weiland*, 792 F.3d at 1324. Indeed, Plaintiffs included the relevant facts in each Count of the Amended Complaint regardless of whether those facts had already been stated earlier in the complaint.

Moreover, the Amended Complaint put Defendants on notice of the allegations against them. Plaintiffs clearly identified the causes of action brought against Defendants and in each and every Count noted which specific Defendant that particular Count was brought against. Despite arguing that the Amended Complaint constitutes shotgun pleading, Defendants have not pointed out any specific factual allegations that are immaterial to Plaintiffs' claims. While the Court's own review of the Amended Complaint does reveal that Plaintiffs unnecessarily repeat certain factual allegations, it does not find that the Amended Complaint is replete with facts that are immaterial to Plaintiffs' claims. Nor does the Amended Complaint fail to separate out Plaintiffs' various causes of action. In fact, Defendants complain of just the opposite—that Plaintiffs have unnecessarily separated out their claims into twenty-two different counts.

To be sure, at times, the Amended Complaint does refer to the three defendants collectively as "Defendants" and does not specify whether the defendants are alleged to have acted collectively or individually. In certain

instances this lack of specification would render a complaint a shotgun pleading. *See, e.g.*, *Magluta v. Samples*, 256 F. 3d 1282, 1284 (11th Cir. 2001); *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 164 (11th Cir. 1997). However, the mere fact that defendants are accused collectively does not always necessitate a restatement of the complaint. Instead, where "[t]he complaint can be fairly read to aver that all defendants are responsible for the alleged conduct," the complaint is not deficient. *See Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000). This is one of those circumstances. The Amended Complaint identifies Dick and Richard Shea as part owners and managers of Morris-Shea. Based on this allegation, it can be inferred that they, along with Morris-Shea, hired, employed, and paid Defendants. Thus, even though discovery may reveal otherwise, it is plausible that all three are responsible for the conduct alleged.

In sum, the Court agrees with Defendants' observation that the Amended Complaint is unnecessarily long and repetitive. However, its stylistic shortcomings are not so severe as to necessitate amendment. If the Amended Complaint were a shotgun pleading, it would be "difficult to understand what the Defendants 'were alleged to have done and why they were liable for doing it.'" *See Downing v. Midland Funding, LLC*, No. 2:15-cv-00737-RDP, 2016 WL 125861, at *3 (N.D. Ala. Jan. 12, 2016) (quoting

*Wright v. Watson*, No. 15-cv-34, 2015 WL 4873381, at *3 (M.D. Ga. Aug. 13, 2015)). Here, the Court concludes that the "counts are informative enough to permit a court to readily determine if they state a claim upon which relief can be granted." *Weiland*, 792 F.3d at 1326. Accordingly, Defendants' motion to strike the Amended Complaint and require Plaintiffs to re-plead is due to be denied.

## IV. CONCLUSION

For the reasons stated above, Morris-Shea and Dick Shea's motion to dismiss (doc. 20) is due to be denied. An order consistent with this opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on January 3, 2019.

_____
L. Scott Coogler
United States District Judge

194800